## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## VALDOSTA DIVISION

| | |
|---|---|
| IN RE: ADVENTURE PARKS GROUP, LLC, et al., | |
| Debtors. | |
| _____ | |
| STATE OF FLORIDA, DEPARTMENT OF REVENUE, | |
| Appellant, | 7:07-cv-188 (HL) |
| v. | |
| ADVENTURE PARKS GROUP, LLC, | |
| Appellee. | |

## ORDER

### I. BACKGROUND

Affiliated entities consisting of Adventure Parks Group, LLC ("APG"), Cypress Gardens Adventure Parks, LLC ("Cypress"), and Wild Adventures Valdosta, LLC ("WAV") (collectively "Debtors" or "Appellees") filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code on September 11, 2006. APG operated essentially as a holding company for both Cypress and WAV.[1]  On

---

[1] The three bankruptcy cases were jointly administered under case number 06-70659.

August 30, 2007, the Debtors filed a Motion in the bankruptcy court seeking authorization to sell Cypress's assets.[2]

Cypress and Land South entered into an Asset Purchase Agreement on or about September 10, 2007. Pursuant to that agreement, Land South's obligation to close the deal was conditional on the bankruptcy court entering a sale order "in form and substance acceptable to the Purchaser in its reasonable discretion" that had not been "reversed, stayed, vacated, modified, or amended" as of the closing. R. V., 820, Ex. A at § 3.1(a). In addition, the Agreement acknowledged that the transfer would be "free and clear of any and all transfer taxes, stamp taxes, sales taxes, use taxes or similar taxes" because it was "consummated in contemplation of a plan to be confirmed in the Bankruptcy Case pursuant to Section [1129(a)] of the Bankruptcy Code." Id. § 8.2.

The bankruptcy court held a hearing on September 27, 2007, on the Motion to authorize the sale of assets. At the hearing, Debtors and Land South contended that the transfer would be exempt from taxes. Appellant State of Florida Department of Revenue was present for the hearing, and argued that the Code's tax exemption did not apply. On October 2, 2007, *nunc pro tunc* to October 1, 2008, the bankruptcy judge granted the Motion, which approved the sale of the Debtors' assets for the price of $16,450,000.00. See R.II, 899 at 28. It also held that the transfer was

---

[2]That Motion was subsequently amended twice to name Land South as the "stalking horse bidder" and add respondents to the Motion.

exempt from bulk sale laws and "any documentary, transfer, recording, stamp, sales, use or similar tax" pursuant to 11 U.S.C. § 1146(a). It provided that "[t]he terms and provisions of this Order are mutually dependent and will be relied upon by the parties in Closing the Transactions and, therefore, the provisions of this Order are not severable." Appellant did not seek a stay of the sale pending a review of the bankruptcy court's decision. It did, however, file its Notice of Appeal on October 11, 2007, which challenges the bankruptcy court's ruling on the tax exempt status of the transfer of assets.

Land South was not obligated to close the deal if the bankruptcy court's order permitting the sale was "reversed, stayed, vacated, modified, or amended" as of the closing. R. V., 820, Ex. A at § 3.1(a). As of the closing on October 16, 2007, although the order had been appealed, it had not been stayed. Land South and Appellant therefore closed the transaction, and Land South has been operating the theme park since then. Appellant did not reserve any proceeds from the sale to pay Florida's transfer taxes.

Before the Court is Florida's appeal of the bankruptcy court's finding that the transfer of assets from Appellee to Land South was exempt from taxes under § 1146(a) of the Bankruptcy Code. Appellee has filed a Motion to Dismiss arguing that the appeal is moot, and Land South has filed a Brief in Support of Appellee's Motion to Dismiss Appeal as an unnamed party-in-interest to the appeal. The Court finds that the doctrine of equitable mootness renders the appeal moot and therefore

declines to address the merits of the case.

## II. ANALYSIS

### A. Policy

"The test for mootness reflects a court's concern for striking the proper balance between the equitable considerations of finality and good faith reliance on a judgment and the competing interests that underlie the right of a party to seek review of a bankruptcy court order adversely affecting him." In re Club Assos., 956 F.2d 1065, 1069 (11th Cir. 1992). In an opinion addressing an appeal of an order confirming a plan of bankruptcy, the Third Circuit summarized the policy rationale of protecting the parties' reliance interests:

> [W]e should ask whether we want to encourage or discourage reliance by investors and others on the finality of bankruptcy confirmation orders. The strong public policy in favor of maximizing debtors' estates and facilitating successful reorganization, reflected in the Code itself, clearly weighs in favor of encouraging such reliance. Indeed, the importance of allowing approved reorganizations to go forward in reliance on bankruptcy court confirmation orders may be the central animating force behind the equitable mootness doctrine.

In re Continental Airlines, 91 F.3d 553, 565 (3rd Cir. 1996). The same concerns over investor's confidence in the finality of unstayed bankruptcy court orders confirming a reorganization plan apply with equal force to orders approving the sale of assets. If investors must risk the possibility that the terms of their contract will be altered by a reviewing court, they will be unwilling to enter into a contract with debtors in

bankruptcy. This would undermine the ability of businesses to emerge successfully from bankruptcy, reduce the value of the bankruptcy estate, and ultimately damage creditors.

### B. Standard

In bankruptcy cases, appeals may be mooted by either common law principles of equitable mootness or under the Bankruptcy Code. Miami Ctr. Ltd. P'ship v. Bank of N.Y., 838 F.2d 1547, 1553 (11th Cir. 1988). These concepts are distinct from the doctrine of constitutional mootness. In re GWI PCS 1, Inc., 230 F.3d 788, 800 (5th Cir. 2000); In re Continental Airlines, 91 F.3d at 558. Under § 363(m) of the Bankruptcy Code, an appeal is moot when it challenges an unstayed order of the bankruptcy court that authorized the sale of assets under that section, and reversal or modification of the order would affect the validity of the sale to a good-faith purchaser. 11 U.S.C. § 363(m). In the present case, however, modification of the bankruptcy court's order would not affect the validity of the sale. Instead, it would simply allow the state of Florida to collect taxes on that sale. The Court therefore looks to the judicially developed doctrine of equitable mootness to determine whether the issue in this case is moot.

The Eleventh Circuit does not employ a bright-line test to determine when a bankruptcy appeal is moot. Instead the test is whether, after considering all the circumstances of the case, the appellate court can "grant effective judicial relief." In re Club Assocs., 956 F.2d at 1070. When a party does not challenge the sale of

5

assets itself, but instead only opposes issues collateral to the sale, a court may consider "the virtues of finality, the passage of time, whether the plan has been implemented and whether it has been substantially consummated,[3] and whether there has been a comprehensive change in circumstances." Miami Ctr., 838 F.2d at 1555.

The court must also consider whether parties to the bankruptcy or third-parties have relied on the bankruptcy court's order and the effect that reversal would have on them. See, e.g., id.; In re Club Assos., 956 F.2d at 1071; see also In re Continental Airlines, 91 F.3d at 565 (reliance need not be reasonable); In re GWI PCS 1, Inc., 230 F.3d at 801 (parties' reliance must be considered even when the reliance was not in good faith). In addition, where a party fails to seek a stay of the order it appeals, equity is not on that party's side. In re Club Assocs., 956 F.2d at 1070.

The analysis of equitable mootness in bankruptcy cases is fact-intensive, but In re Club Associates and Miami Center are similar to the present case and provide

---

[3]Substantial confirmation under the Bankruptcy Code is:
(A) transfer of all or substantially all of the property proposed by the plan to be transferred; (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and (C) commencement of distribution under the plan.
11 U.S.C. § 1101(2). Since this appeal was filed, the bankruptcy court has confirmed a Chapter 11 plan in this case. Confirmation of a plan is relevant to whether an appeal is moot, but it is not dispositive. In re Club Assocs., 956 F.2d at 1069. Neither Land South nor Appellee have argued that confirmation of the plan has rendered this appeal moot. The Court therefore does not consider it.

guidance on the issue. The Eleventh Circuit upheld a district court's finding that an appeal of a bankruptcy court's confirmation order was moot in In re Club Associates because the appellant did not timely seek a stay of the bankruptcy court's order, third-party investors had committed funds relying on the order approving the debtor's bankruptcy plan, and granting the appellant the relief it sought "would have jeopardized the Plan as a whole, which in turn would have put at risk the limited partners' newly invested funds." In re Club Assocs., 956 F.2d at 1071.

In Miami Center, a bank creditor agreed to purchase the debtor's assets at a price set by the bankruptcy court. 838 F.2d at 1549. Debtors challenged a number of aspects of the reorganization plan, including the price the bank paid under the court order. Id. at 1555. No stay was obtained, however, and the sale of the assets was completed and the trustee took steps to carry out the reorganization plan during the pendency of the appeal. Id. In deciding whether the appeal was moot, the Eleventh Circuit weighed the requested relief of requiring the bank to pay more for the assets with "what the bank bargained for, and received, as part of the reorganization plan, and the consequences to the plan of granting the prayers." Id. at 1556. The bank's purchase of the assets was part of a large, intricate agreement in which the bank took risks and made concessions. Id. The provisions of the plan were so intertwined that, if relief were granted, the aftermath in the bankruptcy court would inevitably be unmanageable. Id. at 1556-57. Unwinding the consummation of the plan was therefore "legally and practically impossible." Id. at 1557.

7

In both these cases, the Eleventh Circuit considered the parties' reliance on the bankruptcy's unstayed order. The bank in Miami Center obtained a purchase price for the assets in exchange for other concessions to the debtors. Even though the debtors argued on appeal that the purchase price of the assets was too low, the price was set as part of a bargain between the debtors and the bank. Reversing the sales price of the assets would have therefore altered that bargain and affected the plan as a whole. In addition, third-party investors in In re Club Associates had invested money based on their belief that they would receive a priority return on their investments under the bankruptcy court's unstayed order. Those investors could not be protected if the bankruptcy court's order was reversed because they would not receive the return they expected on investments that had already been made.

**C. Application**

Unlike the appeals of many of the cases that have found equitably moot, the sale order appealed in the present case is a relatively simple order approving a simple transaction. There is no evidence that reversing the bankruptcy court's finding that the transfer was tax exempt would jeopardize the debtor's bankruptcy plan as a whole. The appeal in this case is nonetheless moot, however, because the Court cannot grant effective judicial relief and Appellant failed to seek a stay, which would have protected the interests of the third-party, good-faith purchaser Land South.

### 1. Inability to Grant Effective Relief

The ultimate question in deciding whether a bankruptcy appeal is moot is whether a court can grant effective relief. In re Club Assos., 956 F.2d at 1070. Effective relief cannot be granted in the present case because (1) doing so would impermissibly alter the bargain between Land South and Appellee and (2) Land South would not have purchased the assets unless the transfer was tax exempt, and thus it relied heavily on the bankruptcy court's sale order.

It is clear from the provisions of the Asset Purchase Agreement that a crucial part of the bargain between Land South and Appellee was the bankruptcy court's holding that the transfer would be exempt under § 1146(a). The Agreement provided that Land South's obligation to close was conditioned on the bankruptcy court entering a sale order "in form and substance acceptable to the Purchaser in its reasonable discretion" that had not been "reversed, stayed, vacated, modified or amended" as of the Closing. R. V., 820, Ex. A § 3.1(a). It acknowledged that "the Transactions [were] being consummated in contemplation of a plan to be confirmed in the Bankruptcy Case pursuant to Section [1129(a)] of the Bankruptcy Code," and as a result, the "making or delivery of any instrument or transfer . . . shall be free and clear of any and all transfer taxes, stamp taxes, sales taxes, use taxes or similar taxes." Id. § 8.2.

The proposed order that Land South and Appellant submitted to the court, which was acceptable to Land South under the Agreement, exempted the transfer

under § 1146(a). It also made the provisions of the order non-severable, so the sale would not be approved if any of the provisions were found invalid on appeal. The bankruptcy court adopted these provisions in its sale order, and under the Asset Purchase Agreement Land South was therefore required to complete the transaction.

Just as granting relief would have injured third-party investors in In re Club Associates and the creditor-purchaser in Miami Center, in this case holding that the tax exemption does not apply to the transfer would hurt Land South, since it is ultimately liable for the taxes on the transfer. See R. V., 820, Ex. A § 8.2. In Miami Center, part of the requested relief was an increase in the sales price for the assets. Similarly, reversing the bankruptcy court's grant of a tax exemption to the transfer of Appellee's assets here would effectively increase the price of the transaction for Land South.

Granting relief should not alter what a party "bargained for, and received." Miami Ctr., 838 F.2d at 1556. The purchaser in Miami Center was willing to take on more risk in its deal with the debtor in exchange for a lower sales price. Likewise in the present case, Land South was willing to pay a particular price in exchange for specific, nonnegotiable provisions including the tax exemption. That bargain should not be altered by this Court almost a year after that transaction has taken place.

In addition, Land South relied heavily on the bankruptcy court's finding that the transfer was tax exempt. The Asset Purchase Agreement and the bankruptcy court's order demonstrate that Land South would not have purchased the assets if the

transfer would have been subject to Florida's transfer taxes. If the bankruptcy court had not held that the tax exemption applied, Land South would not have been obligated to complete the transaction. In addition, if the order confirming the sale would have been stayed, appealed, vacated or amended, Land South could have declined to purchase the assets. Land South therefore relied on the order when it closed the acquisition. Land South cannot be returned to its status quo before the bankruptcy court's order was issued because the sale cannot be rescinded.

Appellant argues that Land South's claim to rely on the tax exemption is disingenuous because a provision of the Asset Purchase Agreement makes Land South liable for taxes in the event they are assessed. This argument is unconvincing, however, in light of the clear evidence that Land South would not have closed the transaction without a finding that the tax exemption applied. The Court declines to penalize Land South for carefully drafting its Agreement and providing for the remote chance that taxes, which were not then contemplated by the parties, may have been assessed.

2. Equities of the Case

Appellant could have protected Land South's interests by seeking a stay of the bankruptcy court's order, but it chose not to do so. Florida argues that if it had obtained a stay from the bankruptcy court then Land South could have walked away from the deal and the appeal would have been moot. Although this is true, it bolsters Land South's claim that it relied on the bankruptcy court's order approving *all* the

provisions of the agreement that Land South negotiated with Appellant: in the event the order did not contain all the provisions Land South wanted or was "reversed, stayed, vacated, modified, or amended" Land South would no longer have been willing to complete the transaction.

In addition, Land South's plan to back out of the deal if a stay was in place is precisely the reason that Florida should have sought a stay. Florida essentially argues that it wanted the purchaser to rely on the order and close the transaction, so that Florida could then seek reversal of that same relied-upon order. This practice turns the policy of protecting reliance interests in bankruptcy on its head. Instead of protecting Land South's reliance on the bankruptcy court's order, Florida's actions attempt to abuse Land South's reliance by luring it into a deal that it would not have otherwise entered. The Court therefore finds that equity favors finding the appeal moot.

## III.  CONCLUSION

In sum, the asset purchase agreement between Cypress and Land South specifically required the inclusion of the tax exemption language in the sale order, the requirement was a condition to Land South's obligation to close its acquisition of the purchased assets, the bankruptcy court entered a non-severable sale order containing the tax exemption language, Appellant did not seek a stay of the order, and Land South relied on the order on it when it completed the transaction. Based on this set of specific facts, the Court cannot grant effective relief. In addition, policy

considerations and equity weigh in favor of finding the appeal moot. The Motion to Dismiss is thus granted.

**SO ORDERED**, this the 13th day of August, 2008.

*s/ Hugh Lawson*
**HUGH LAWSON, Judge**

tch